IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | Cr. No. 06-071-01T |
| | ) | |
| SANDY BAEZ | ) | |

## GOVERNMENT'S TRIAL MEMORANDUM

### I. The Indictment and Elements

The indictment charges SANDY BAEZ with assaulting a federal officer in violation of 18 U.S.C. § 111(b) (Count I), with conspiracy to distribute and possess with the intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 846 (Count II), and with possession with the intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 (Count III).

The elements of Count I are as follows:

First, that the defendant forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with Task Force Agent (TFA) Michael Naylor;

Second, That TFA Naylor was a federal officer as described below, who was engaged in the performance of his official duties;

Third, That the defendant did such acts intentionally; and

Fourth, That in doing such acts the defendant inflicted bodily injury.

The elements of Count II are as follows:

First, That the conspiracy charged in the indictment existed between at least two people to distribute and possess with intent to distribute heroin; and,

Second, That the defendant willfully joined in that agreement.

If the jury finds the government proved each of the above two elements beyond a reasonable doubt, then they must answer the following question:

How much heroin was involved in the conspiracy as a whole?

____ at least 100 grams of heroin

____ less than 100 grams of heroin

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, §§ 4.18.371 & 4.21.841(a)(1) Comment note 2; see also United States v. Ortiz, 447 F.3d 28, 37 and n.6 (1st Cir. 2006) (affirming the district court's charge asking the jury to determine the quantity of cocaine involved in the conspiracy as a whole).

The elements of Count III are as follows:

First, that defendant on or about May 10, 2006 possessed heroin, either actually or constructively;

Second, that he did so with a specific intent to distribute the heroin over which he had actual or constructive possession; and,

Third, that he did so knowingly and intentionally.

If the jury finds the government proved each of the above elements beyond a reasonable doubt, then the jury must answer the following question:

Did the offense involve 100 grams or more of heroin?

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.21.841(a)(1), Comment note 2.

With respect to Count III, to establish aiding and abetting, the government must prove beyond a reasonable doubt:

First, that someone else committed the charged crime; and

Second, that defendant consciously shared the other person's knowledge of the underlying criminal act, intended to help him, and willfully took part in the endeavor, seeking to make it succeed.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.18.02.

## II. Factual Summary

The government expects the evidence in this case to show the following:

On May 9, 2006, the defendant met with a reliable Confidential Source (CS) of the Drug Enforcement Administration (DEA). This meeting was video and audio tape recorded. During the course of their conversation, the defendant and the CS made

arrangements to meet on May 10, 2006 at Honey Dew Donuts at the corner of Hartford Avenue and Killingly Street, Johnston, Rhode Island. The defendant told the CS that he would furnish the CS with approximately 140 grams of heroin.

On May 10, 2006, the CS was checked for contraband with negative results. The CS was furnished with an undercover vehicle which was also checked for contraband with negative results. The CS was then followed to the prearranged location to conduct the aforementioned meeting with the defendant. This meeting was video and audio tape recorded.

During the course of this meeting, the defendant told the CS that a friend of his had the heroin and that he was nearby. The defendant whistled and nodded to Nogueira Recio, as witnessed by surveillance agents, and Nogueira Recio proceeded to enter the rear seat of the CS vehicle. Nogueira Recio handed the CS a tube shaped object wrapped in blue tape. The defendant stated that this stuff was better than the last stuff.

At this time, law enforcement approached the undercover vehicle. Nogueira Recio was apprehended immediately. The defendant exited the undercover vehicle and tried to evade law enforcement on foot but was subsequently apprehended after a violent struggle.

This struggle continued after the initial arrest of the defendant. TFA Naylor, in the presence of Special Agent Anthony

Cardello, read the defendant his Miranda rights after which the defendant stated "I have two degrees I know more than the two of you." The defendant stated "just take me to jail I'll go back to my country and be a millionaire." While transporting the defendant to the DEA for processing, he became agitated and began to shift in his seat and then started to kick at TFA Naylor striking TFA Naylor in the head and chest. A violent struggle ensued until the defendant could be restrained. Agents then transported the defendant to the DEA Office. TFA Naylor suffered bruises to the forehead as a result of being kicked by the defendant, these were subsequently photographed.

Law enforcement personnel discovered the above referenced blue shaped tube in the front seat of the undercover vehicle. The blue shaped tube was transported to the Drug Enforcement Administration Providence Resident Office. The tube shaped object wrapped in blue tape was opened by law enforcement and it was determined to contain a brownish colored powdery substance. The substance was sent to the DEA laboratory for testing. The substance proved to be heroin with a net weight of 129.7 grams.

## III. Legal Issues

### A. Fed.R.Evid. 404(b)

The government will brief the issue of 404(b) evidence in a separate filing.

B. Opinion Evidence

The government will offer the testimony of law enforcement personnel, in particular TFA Mike Naylor, who will testify, based on their extensive experience and training in the field of narcotics trafficking, to the methods and operation unique to narcotics trafficking and to the meaning of terminology and jargon used in the drug trade. Specifically, agents may testify to the price of heroin; the manner in which it is manufactured, packaged, sold and used; the equipment used in narcotics trafficking; and, the "code", as well as other tactics used by drug dealers, to evade detection by law enforcement. The government will also elicit testimony about the techniques used by law enforcement in a narcotics investigation.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, 454 F.3d 13, 23-24 (1st Cir. July 6, 2006) (upholding the admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession

with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (in a narcotics case, agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983).

C. Conspiracy

A conspiracy is an agreement between two or more persons to commit a particular crime. United States v. Fenton, 367 F.3d 14, 19 (1st Cir. 2004). It is an agreement to disobey or to disregard the law. United States v. Pacheco-Ortiz, 889 F.2d 301, 304 (1st Cir. 1989).

The government must prove that an agreement existed to commit the underlying offense and that the defendant elected to join the agreement intending that the underlying offense be committed. United States v. Medina-Martinez, 396 F.3d 1, 5 (1st Cir. 2005). But, under 21 U.S.C. § 846, the government need not

prove the commission of an overt act in furtherance of the conspiracy. See United states v. Shabani, 513 U.S. 10, 17, 115 S.Ct. 382, 383 (1994). Furthermore, the government need not prove that the conspiracy succeeded or was achieved, so long as it proves that there was an agreement to engage in a criminal venture. See United States v. Waldron, 590 F.2d 33, 34 (1st Cir. 1979)(holding in an importation of stolen goods case, the "government need not prove that goods worth more than $5,000 were actually transported to make out a conspiracy . . . so long as the conspirators planned to transport sufficiently valuable goods"); United States v. Belardo-Quinones, 71 F.3d 941, 944 (1st Cir. 1995).

The government must prove that the defendant had knowledge of the basic agreement. United States v. Marsh, 747 F.2d 7, 12 (1st Cir. 1984). However, the defendant need not have knowledge of all of the details of the conspiracy, nor of all of the participants in the conspiracy, nor of their acts. See United States v. Martinez-Medina, 279 F.3d 105, 113 (1st Cir. 2002). In fact, in a drug conspiracy, the government need not prove the defendant knew the type or quantity of drug involved, "*only* that the offense 'involved' a particular type or quantity." See United States v. Collazo-Aponte, 281 F.3d 320, 326 (1st Cir. 2002).

Once the existence of a conspiracy is established, evidence

establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though that connection be slight, is sufficient to convict that defendant of knowing participation in that conspiracy. Marsh, 747 F.2d at 13. The government must prove that each defendant knowingly and intentionally joined the conspiracy. Pacheco-Ortiz,889 F.2d at 304. A defendant's knowing participation in a conspiracy may be established by proof of surrounding circumstances. United States v. Paradis, 802 F.2d 553, 559 (1st Cir. 1986). The agreement need not be express, and may consist of no more than a tacit understanding. Pacheco-Ortiz, 889 F.2d at id.

D. Acts of Co-conspirators

A co-conspirator is responsible not only for his own acts, but also for the acts of other conspirators done in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180 (1946); United States v. Rengifo, 858 F.2d 800, 807 (1st Cir. 1988). For purposes of criminal liability as a conspirator, one who joins an ongoing conspiracy is deemed to have adopted the prior acts and declarations of his co-conspirators made after the formation of and in furtherance of the conspiracy. Thus, the defendant is bound by all acts committed by co-conspirators in furtherance thereof, including those acts committed without his knowledge before he joined the conspiracy. United States v. O'Campo, 973 F.2d 1015, 1022-23

(1st Cir. 1992).

E. Audio and Video Recordings

The admissibility of audio recordings is a matter within the sound discretion of the Court. United States v. Santana, 898 F.2d 821, 823-24 (1st Cir. 1990). To successfully challenge an audio recording on grounds of audibility, the inaudible parts must be so substantial as to make the remainder of the tape recording more misleading than helpful. United States v. DiSanto, 86 F.3d 1238, 1253 (1st Cir. 1996); United States v. Font-Ramirez, 944 F.2d 42, 46-47 (1st Cir. 1991); United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986).

A decision to permit transcripts of recorded conversations to be used by the jury is a decision within the sound discretion of the Court. It is the recording which is the evidence, not a transcript of the conversation. United States v. Morales-Madera, 352 F.3d 1, 7 (1st Cir. 2003); United States v. Campbell, 874 F.2d 838, 849-50 (1st Cir. 1989); Rengifo, 789 F.2d at 983.

A defendant's own statements in a recorded conversation are admissible against him as admissions against interest. Fed.R.Evid. 801(d)(2)(A). The defendant cannot keep from the jury other segments of the conversation reasonably required to place the defendant's admissions in context. Such other parts of the conversation are properly admitted as reciprocal and integrated utterances to put the defendant's statements into perspec-

tive and make them intelligible to the jury and recognizable as admissions. These other portions of the conversation are not hearsay. They are not offered to prove the truth of the matter asserted, but only to give context to what the defendant is saying. United States v. Catano, 65 F.3d 219, 224 (1st Cir. 1995); United States v. McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990). Such statements could also be admitted as adopted statements under Fed.R.Evid. 801(d)(2)(B).

In this case, the government intends to introduce video recordings (that contain audio) of activities and conversations that occurred between the cooperating individual and the defendant on May 9, 2006 and May 10, 2006.

F. Transcripts

The government and the defense have agreed to the English transcripts of the video recordings.

## IV. Requested Voir Dire and Jury Instructions

The government filed its proposed voir dire questions and jury instructions under separate cover.

## V. Witness and Evidence List

The government will submit a witness and evidence list under separate cover prior to the commencement of trial.

VI. Estimated Time of Trial

The government estimates that it will take two days to conduct the trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2007, a copy of the within "Government's Trial Memorandum" was filed electronically and is available for viewing and downloading from the ECF system. I also certify that a copy was mailed to Mr. John Ruginski, Jr. at the following address:

129 Dorrance Street, Suite 1
Providence, Rhode Island 02903

______________________________